IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | |
|---|---|
| ELAINE JAMES, M.D., ) | |
| ) | |
| Plaintiff, ) | 8:09CV112 |
| ) | |
| v. ) | |
| ) | |
| THE STATE OF NEBRASKA; ) | MEMORANDUM AND ORDER |
| NEBRASKA BOARD OF MEDICINE & ) | |
| SURGERY; JOANN SCHAEFER, M.D.,) | |
| in her personal capacity;    ) | |
| HELEN MEEKS, in her personal ) | |
| capacity; DAVID DRYBURGH,    ) | |
| CARL V. SMITH, M.D.; VONN E. ) | |
| ROBERTS, M.D.; LARRY E.      ) | |
| BRAGG, M.D.; MICHAEL SITORIUS,) | |
| M.D.; ARTHUR WEAVER, D.O.;   ) | |
| MERLE HENKENIUS; KAREN       ) | |
| HIGGINS, M.D., in their      ) | |
| personal capacities;         ) | |
| NEBRASKA DEPARTMENT OF       ) | |
| HEALTH AND HUMAN SERVICES,   ) | |
| DIVISION OF PUBLIC HEALTH,   ) | |
| an agency in the State of    ) | |
| Nebraska,                    ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This matter is before the Court on defendants' motion for summary judgment (Filing No. 84) and plaintiff's motion for partial summary judgment (Filing No. 92) pursuant to Federal Rule of Civil Procedure 56. Plaintiff Elaine James, M.D. ("Dr. James") brought this action pursuant to 42 U.S.C. § 1983, asserting due process and equal protection violations, violations of the American Disabilities Act, and a state law defamation claim. Defendants are ten individuals (Chief Medical Officer Joann Schaefer, M.D. ("Dr. Schaefer"), Licensure Unit

Administrator Helen Meeks ("Ms. Meeks"), and eight members of the Nebraska Board of Medicine and Surgery ("Board Members")) and three Nebraska state entities (the State of Nebraska, the Nebraska Board of Medicine and Surgery (the "Board"), and the Nebraska Department of Health and Human Services ("DHHS")). After reviewing the briefs, relevant case law, and evidence, the Court will grant in part and deny in part defendants' motion and will deny Dr. James' motion.

## BACKGROUND AND PROCEDURAL HISTORY

In 2007, the University of Nebraska Medical Center ("UNMC") retained Dr. James for a fellowship (Complaint, Filing No. 1, at 4). Dr. James filed an application for a temporary education permit ("TEP") to practice medicine with DHHS on June 4, 2007. Dr. James disclosed that she was diagnosed as having bipolar disorder and neurocardiac syncope, a heart condition requiring a pacemaker. On December 27, 2007, DHHS offered Dr. James a probationary TEP, which DHHS referred to as a "disciplinary action." Dr. James chose to appeal DHHS's decision by requesting a hearing with DHHS.

In 2008, at the end of her fellowship at UNMC, Dr. James applied to DHHS for a full license to practice medicine. On November 26, 2008, DHHS offered Dr. James a full license on a disciplinary probationary basis. Dr. James requested a hearing with DHHS regarding this decision as well.

On two occasions, DHHS posted copies on its website of the minutes from the Board's meetings referring to the consideration of Dr. James' applications.  The meeting minutes were, for a time, accessible by the public.

On March 26, 2009, before her DHHS appeals hearing, Dr. James filed a complaint with this Court, in which she alleges five causes of action: (1) violations of the Americans with Disabilities Act; (2) due process violations; (3) equal protection violations; (4) deprivation of civil rights under 42 U.S.C. § 1983; and (5) defamation.

DHHS conducted a hearing on April 14, 2009, regarding Dr. James' applications (Ex. 10, Filing No. 93, at 1).  On April 27, 2009, and May 4, 2009, the parties submitted post-hearing briefs to DHHS in connection with the hearing.

On May 21, 2009, defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction (Filing No. 31).

On August 6, 2009, Dr. Schaefer issued an order granting Dr. James an unrestricted license to practice medicine and surgery ("August 6 Order," Ex. 10, Filing No. 93, at 4).  In the August 6 Order, Dr. Schaefer found that DHHS did not follow statutory procedural requirements and that DHHS "did not give [Dr. James] the due process that was required before they decided to discipline her."  Furthermore, Dr. Schaefer stated that DHHS

applied the wrong standard in deciding to institute a disciplinary action because Dr. James had not been found "guilty" of incapacity to practice medicine "as evidenced by a legal adjudication or determination thereof by other lawful means," as required by Nebraska Revised Statute Sections 71-147(7) and 71-161.13.[1]  Dr. Schaefer held that the "most equitable remedy" would be to grant Dr. James a license to practice medicine and surgery without limits.  This order reversed DHHS's decision to offer the probationary TEP and license and vacated and expunged DHHS's disciplinary actions.  Subsequent to the August 6 Order, on August 12, 2009, defendants filed a suggestion of mootness with this Court (Filing No. 50, at 1).

On September 4, 2009, Dr. Schaefer issued a new order (the "September 4 Order") that "vacated in its entirety" the August 6 Order (Ex. 11, Filing No. 93, at 3).  In the September 4 Order, the direct quotes cited above from the August 6 Order were deleted.

On November 17, 2009, this Court granted in part and denied in part defendants' suggestion of mootness (Filing No. 54).  In addition, this Court granted in part and denied in part defendants' motion to dismiss.

---

[1] Neb. Rev. Stat. §§ 71-147(7) and 71-161.13 were part of the Uniform Licensing Law at the time of the Board's actions in this case.  These statutes have since been replaced by the Uniform Credentialing Act, Neb. Rev. Stat. §§ 38-101 *et seq*.

**STANDARD OF REVIEW**

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 321-23 (1986). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Koehn v. Indian Hills Cmty. Coll.,* 371 F.3d 394, 396 (8th Cir. 2004).

**I. Absolute Immunity**

Whether an official is entitled to absolute immunity "turns on a number of factors," namely,

> "(a) the need to assure that the individual can perform his [or her] functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process;

>             and (f) the correctability of error
>             on appeal."

*Buser v. Raymond*, 476 F.3d 565, 568 (8th Cir. 2007) (quoting *Krueger v. Lyng*, 4 F.3d 653, 656 (8th Cir. 1993)); *see Butz v. Economou*, 438 U.S. 478, 512 (1978).

**A.   Dr. Joann Schaefer, Chief Medical Officer.**

Dr. Schaefer's decision to issue Dr. James' license exposed her to the threat of litigation.  The Court finds there is a need to assure that Dr. Schaefer can make her decisions "without harassment or intimidation."  *Buser*, 476 F.3d at 570.

"If adequate safeguards exist in the hearing process and the [Chief Medical Officer's] duties are 'functionally comparable' to that of a judge, such factors weigh in favor of absolute immunity."  *Id*. (quoting *Bettencourt v. Bd. of Registration in Med. of Commonwealth of Mass.*, 904 F.2d 772, 783 (1st Cir.1990)).  Dr. James was allowed to appeal DHHS's decisions at a hearing where she could present evidence and call witnesses on her behalf.  Dr. Schaefer reviewed the evidence and rendered a decision based upon the hearing record, making findings of fact and conclusions of law.  The Court finds that Dr. Schaefer's actions were "functionally comparable" to a that of a judge.

Dr. James claims that Dr. Schaefer's independence was compromised because of Dr. Schaefer's "consultation with agency representatives outside the presence of the Plaintiff which

resulted in a change to the original order written" (Plaintiff's Brief in Resistance to Defendants' Motion for Summary Judgment, Filing No. 101, at 10). In support of this claim, Dr. James cites *Butz*, where the Supreme Court identified restraints that insured the independence of the agency hearing officer entitled to absolute immunity:  "[A] hearing examiner [may not] consult any person or party, including other agency officials, concerning a fact at issue in the hearing, unless on notice and opportunity for all parties to participate." *Butz*, 438 U.S. at 514 (citing 5 U.S.C. § 554(d)(1) (1976 ed.)).  The Court finds that the consultation with legal counsel did not destroy the independence of her decision making.

The Court finds the fact that Dr. Schaefer was appointed by the governor does not establish that she was subject to political influence in her decision making.  Finally, the Court notes that the DHHS hearing process is adversarial, and that in the case of error by Dr. Schaefer, "[b]oth parties shall have the right of appeal and the appeal shall be in accordance with the Administrative Procedures Act."  Neb. Rev. Stat. § 71-159 (2003).  Thus, the Court finds that a majority of the *Buser* factors favor Dr. Schaefer and that she is entitled to absolute immunity for the  § 1983 claims against her.

**B.    Helen Meeks, Licensure Unit Administrator.**

"[Ms. Meeks is] responsible for making initial decisions . . . regarding applications for licensure by physicians and surgeons" (Affidavit of Helen L. Meeks, Exhibit 3, Filing No. 88, at 1).  Ms. Meeks "extended an offer of a TEP on probation to Dr. James" (*Id.* at 2).  Likewise, Ms. Meeks "ultimately determined that the appropriate decision was to offer a probationary license" (*Id.*).  Ms. Meeks' decisions regarding licensure, like Dr. Schaefer's, raise the specter of intimidation from the threat of litigation.

However, Ms. Meeks did not make her decisions regarding Dr. James' TEP and license applications pursuant to the review of the record of a hearing with witnesses, testimony, and the presentation of evidence.  Instead, Ms. Meeks made her decisions based on Dr. James' application materials, the recommendation of the Board, and Ms. Meeks' consultation with legal counsel (Affidavit of Helen L. Meeks, Exhibit 3, Filing No. 88, at 2).  Thus Ms. Meeks' duties are not "functionally comparable" to that of a judge, and she did not engage in an adversarial process such as a hearing.

Ms. Meeks makes no argument as to her insulation from political influence.  However, in her affidavit, Ms. Meeks states, "Dr. James' applications were processed in the same fashion as other similar applications" (Second Affidavit of Helen

-8-

L. Meeks, Exhibit 1, Filing No. 98, at 2-3). Dr. James does not offer any contrary evidence, aside from speculation, on this matter. Thus, it appears that Ms. Meeks' actions did support the importance of precedence. Finally, Ms. Meeks' decisions with regard to Dr. James were ultimately reversed by Dr. Schaefer on appeal.

Based on the foregoing analyses, the Court finds Dr. Schaefer is entitled to absolute immunity. The Court further finds that the second factor requiring adequate safeguards in conjunction with duties that are functionally comparable to that of a judge is not met as to Ms. Meeks. This factor goes to the heart of the matter of quasi-judicial absolute immunity. *Butz*, 438 U.S. at 514. Because this factor is not satisfied and a majority of the *Buser* factors are not met, Ms. Meeks' role in the licensure process does not warrant absolute judicial immunity.

**C.   Eight Individual Board Members**.

"'Every court of appeals that has addressed the issue has concluded that members of a state medical disciplinary board are entitled to absolute quasi-judicial immunity for performing judicial or prosecutorial functions.'" *Buser*, 476 F.3d at 568-69 (quoting *Ostrzenski v. Seigel*, 177 F.3d 245, 249 (4th Cir. 1999)). "For example, in *Bettencourt*, the First Circuit held that a member of the medical board who weighs evidence, makes factual and legal determinations, chooses sanctions, writes

-9-

opinions explaining his decisions, serves a set term . . . and can be removed only for cause is functionally comparable to a judge." *Buser*, 476 F.3d at 569-70.  Similarly, in another medical board case, *O'Neal v. Miss. Bd. of Nursing,* 113 F.3d 62, 66 (5th Cir. 1997), the Fifth Circuit found that

> The Board and its members administer oaths, compel the attendance of witnesses, allow parties to present the testimony of witnesses as well as cross-examine witnesses who testify against them, permit parties to be represented by counsel, and most importantly make findings of fact and assess punishments or accolades in accordance with these findings.

In contrast to disciplinary situations where the involved board has actual decision making authority, the Board's authority in this case is recommendational only.  Because the Board Members' duties are admittedly not "functionally comparable" to that of a judge and the Board Members do not perform a judicial function, they will not be granted absolute immunity.

**II. Qualified Immunity**

"The purpose of qualified immunity is to allow public officers to carry out their duties as they believe are correct and consistent with good public policy, rather than acting out of fear for their own personal financial well being."  *Sparr v. Ward,* 306 F.3d 589, 592 (8th Cir. 2002).  "Qualified immunity

protects public officials who act in good faith while performing discretionary duties that they are obligated to undertake." *Kloch v. Kohl*, 545 F.3d 603, 609 (8th Cir. 2008). "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "A right is clearly established, for qualified immunity purposes, if the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Rush v. Perryman*, 579 F.3d 908, 913. "The issue is not whether the defendant acted wrongly, but whether reasonable persons would know they acted in a manner which deprived another of a known constitutional right." *Herts v. Smith*, 345 F.3d 581, 585 (8th Cir. 2003).

**A.  Equal Protection.**

Dr. James states that she was denied equal protection because the applications for the TEP and the physician license specifically inquire as to mental illnesses, but not physical illnesses (Filing No. 101, at 24). However, the apparent solution would be to add questions about physical illness, not to remove questions about mental illness. Dr. James would still have been required to disclose her mental illness. In short, Dr.

-11-

James has not established that "reasonable persons would know they acted in a manner which deprived another of a known constitutional right" when Ms. Meeks and the Board Members considered the mental illness of a physician who applied for a license. *Herts*, 345 F.3d at 585. Thus Ms. Meeks and the Board Members will be granted qualified immunity as to the § 1983 equal protection claims against them.

**B.  Due Process**.

"[A]ccess to an entire profession is a liberty interest that cannot be denied without due process of law." *Greenlee v. Board of Medicine of District of Columbia*, 813 F.Supp. 48, 57 (D.D.C. 1993). Dr. James claims two major infractions of her due process rights in her interest in a medical license.

**1.  Failure to Comply with Nebraska Statute**. Dr. James claims that defendants did not follow the procedure provided for under then Nebraska Revised Statute Section 71-161.13 because her case was not submitted to a three-physician panel before the imposition of disciplinary action against her (Filing No. 101, at 20-21). Dr. James claims that this is a *de facto* deprivation of due process, citing, "Thus it has become a truism that *some* form of hearing is required before the owner is finally deprived of a protected property interest." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982). But here, Dr. James *was* allowed "some" form of hearing, on April 14, 2009, before she was *not* "finally"

deprived, since her license was issued in August 2009.  "To put it as plainly as possible, the State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement."  *Logan*, 455 U.S. at 434.  Dr. James' interest, whether a liberty or a property interest, was simply never "finally destroyed."  She was issued a medical license and won both her appeals.

       Dr. James also argues that a violation of due process occurred because the stipulated Nebraska procedure was not followed.  However, in *Davis v. Scherer*, 468 U.S. 183 (1984), the United States Supreme Court made it clear that a violation of a procedural statute, without more, does not abrogate an official's qualified immunity under § 1983.  "We acknowledge of course that officials should conform their conduct to applicable statutes and regulations."  *Id.* at 194.  The Court continued,

> The qualified immunity doctrine recognizes that officials can act without fear of harassing litigation only if they reasonably can anticipate when their conduct may give rise to liability for damages and only if unjustified lawsuits are quickly terminated. Yet, under appellee's submission, officials would be liable in an indeterminate amount for violation of any constitutional right . . . merely because their official conduct also violated some statute or regulation.  And, in § 1983 suits, the issue whether an official enjoyed qualified immunity then might depend upon the meaning

> or purpose of a state administrative regulation, questions that federal judges often may be unable to resolve on summary judgment.

*Id.* at 195. This Court finds that the apparent failure to comply with the Nebraska statutory three-physician panel requirement does not dictate the loss of qualified immunity for Ms. Meeks or for the Board Members.

    **2. Inordinate Delay**. Dr. James complains that there were delays in her application and appeal process. Defendants counter that the delay was "due to circumstances largely beyond the control of the Defendants" (Filing No. 107, at 8). Defendants filed a chronology of events in the case (Ex. 62, Filing No. 98). Dr. James has not filed her own chronology with which to combat defendants' view.

    While Dr. James emphasizes the two-year delay, she does not acknowledge that according to defendants' chronology, Dr. James' TEP application was received by DHHS on June 4, 2007, but supporting documentation was not received until November 13, 2007, over five months later (*Id.* at 1). As another example, Dr. James complains that defendants "failed to rule on the case for an additional 4 months" after the hearing on April 14, 2009 (Filing No. 94, at 11). However, Dr. James does not mention that during that four-month span, "the parties submitted post-hearing

briefs to DHHS in connection with the hearing." (Ex. 10, Filing No. 93, at 1).

Given the complexity of this case, Dr. James has simply not established that "reasonable persons would know they acted in a manner which deprived another of a known constitutional right" when Ms. Meeks and the Board Members acted at the pace that they did at any particular step in the proceedings. *Herts*, 345 F.3d at 585. The Court finds that Ms. Meeks and the Board Members are entitled to qualified immunity as to the § 1983 due process claims against them.

**C. Defamation.**

Dr. James alleges that the Board Members defamed her by posting statements about the decisions surrounding Dr. James' applications on the DHHS website (Complaint, Filing No. 1 para. 57). However, the Nebraska Uniform Licensing Law of the time provided,

> No member of a professional board for any profession or occupation credentialed by the department pursuant to Chapter 71 . . . shall be liable in damages to any person for . . . defamation of character, breach of any privileged communication, or otherwise for any action taken or recommendation made within the scope of the functions of such board . . . if the board member . . . acts without malice and in the reasonable belief that such action . . . is warranted by the facts known to him or her after a reasonable effort is made to

>               obtain the facts on which such
>               action is taken . . . .

Neb. Rev. Stat. § 71-161.19 (2003).  The Nebraska "Open Meetings Act" requires that "[t]he minutes of all meetings and evidence and documentation received or disclosed in open session shall be public records and open to public inspection during normal business hours."  Neb. Rev. Stat. § 84-1413(4) (2007).  The Court finds that the Board Members are immune from a defamation suit pursuant to Nebraska Revised Statute § 71-161.19 (2003).

**III.  Failure to State a Claim Under the Equal Protection Clause**

Because Dr. Schaefer, Ms. Meeks, and the Board Members were the only remaining defendants for Dr. James' claim under the Equal Protection Clause, and they are all immune from suit under § 1983, this claim is moot.

**IV.  Failure to State a Claim Under the Due Process Clause**

Because Dr. Schaefer, Ms. Meeks, and the Board Members were the only remaining defendants for Dr. James' claim under the Due Process Clause, and they are all immune from suit under § 1983, this claim is moot.  For the same reason, Dr. James' motion for partial summary judgment will be denied.

**V.  Americans with Disabilities Act**

The Americans with Disabilities Act (the "ADA") states, "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of

the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "Medical licensing clearly falls within the scope of [the ADA]." *Hason v. Med. Bd. of Cal.*, 279 F.3d 1167, 1172 (9th Cir., 2002). "Although persons with disabilities are generally entitled to the protection of this part, a person who poses a significant risk to others will not be 'qualified,' if reasonable modifications to the public entity's policies, practices, or procedures will not eliminate that risk." 28 C.F.R. Pt. 35, App. A at 553 (2007). However, "[t]he determination that a person poses a direct threat to the health or safety of others may not be based on generalizations or stereotypes about the effects of a particular disability. It must be based on an individual assessment . . . ." *Id*.

Defendants claim, "[I]t is clear that [Dr. James] is not a qualified individual under the ADA because she posed a potential significant risk to the health and safety of others" (Filing No. 86, at 12). Yet defendants do not make an "individual assessment" of Dr. James by stating what risk she posed or whether reasonable modifications would eliminate the risk.

At the same time, in defendants' brief (Filing No. 97, at 2), defendants "agree" with Dr. James' statement,

> During the application process for
> both her Temporary Educational

> Permit and the full license Dr. James submitted letters to the Department of Health and Human Services licensing specialists from her treating physicians, as well as a colleague indicating that in their opinion she was compliant with her treatment, stable on her medications, and had shown no limitations to safely practice medicine.

(Filing No. 94, para. 15). Even if defendants were merely agreeing that the letters had been submitted, they cite no contrary evidence that would explain the risk that they feared.

This Court finds that the ADA contemplates the protection of a disabled physician from discrimination during the licensing process. As the moving party, defendants have not established that Dr. James posed a significant risk that could not be eliminated by reasonable modification. Therefore, defendants have not established that Dr. James is not a qualified individual under the ADA, and defendants' motion regarding the ADA will be denied. Accordingly,

IT IS ORDERED:

1) Defendants' motion for summary judgment (Filing No. 84) is granted in part and denied in part:

> a) Defendant Dr. Schaefer is granted absolute immunity as to Dr. James' § 1983 claims made against her;
>
> b) Defendants Ms. Meeks and the Board Members are granted qualified

>>immunity as to Dr. James' § 1983 claims made against them;
>
>>c) Defendant Board Members are immune from defamation suit by Dr. James as per Nebraska statute; and
>
>>d) Defendants' motion for summary judgment as to Dr. James' American Disabilities Act claim is denied.

2) Dr. James' motion for partial summary judgment (Filing No. 92) is denied.

DATED this 13th day of September, 2011.

>BY THE COURT:
>
>/s/ Lyle E. Strom
>_____
>LYLE E. STROM, Senior Judge
>United States District Court