```
              IN THE UNITED STATES DISTRICT COURT FOR THE

                          DISTRICT OF NEBRASKA

ELAINE JAMES, M.D.,            )
                               )
                Plaintiff,     )          8:09CV112
                               )
        v.                     )
                               )
THE STATE OF NEBRASKA;         )          MEMORANDUM OPINION
NEBRASKA BOARD OF MEDICINE &   )
SURGERY; NEBRASKA DEPARTMENT   )
OF HEALTH AND HUMAN SERVICES,  )
DIVISION OF PUBLIC HEALTH,     )
an agency in the State of      )
Nebraska,                      )
                               )
                Defendants.    )
_____)
```

This matter is before the Court on the application of plaintiff Elaine James, M.D. ("Dr. James") for attorney fees and expenses (Filing No. 198, with brief and index of evidence, Filing Nos. 200 and 199). Defendants filed a brief in opposition to the application (Filing No. 203, with index of evidence, Filing No. 204), to which Dr. James replied (Filing No. 206, with index of evidence, Filing No. 205). In addition, Dr. James filed an affidavit with the Court, along with a copy of the contingent fee agreement with her attorney (Filing No. 208). After reviewing the application, briefs, evidence, and relevant law, the Court will grant, in part, the requests made in Dr. James' application.

This case stems from Dr. James' initially unsuccessful applications for medical licensure with the State of Nebraska

(*See* Filing No. 109, Memorandum and Order granting partial summary judgment to defendants, for detailed factual history). Dr. James set forth five claims in her complaint: (1) violation of the Americans with Disabilities Act ("ADA"); (2) violation of her due process rights asserted under 42 U.S.C. § 1983; (3) violation of her equal protection rights asserted under 42 U.S.C. § 1983; (4) deprivation of civil rights asserted under 42 U.S.C. §§ 1983 and 1985; and (5) defamation (Complaint, Filing No. 1). On summary judgment, all except the ADA claim were rejected on immunity grounds (Filing No. 109).

After a trial on the ADA claim only, the jury found in favor of Dr. James on her claim of discrimination on the basis of her disability against defendant Nebraska Department of Health and Human Services, and the jury awarded Dr. James $72,727.00 in damages (Verdict Form, Filing No. 187). Dr. James now seeks "reasonable attorney fees, including litigation expenses and costs" as allowed under 42 U.S.C. § 12205 (Filing No. 198, at 2). Specifically, Dr. James requests attorney fees in the amount of $138,352.50[1] and costs in the amount of $24,647.00.[2] (*Id.*).

---

[1] This includes an additional $2,100.00 for the preparation of plaintiff's reply brief and index of evidence (Ex. 2, Filing No. 205, at 2).

[2] Dr. James changes the amount of costs to $24,627.00 in her brief (Filing No. 200, at 1, 3) and index of evidence (Ex. 1, Filing No. 199, at 2). In her reply brief, she revises the number further to $24,188.15 (Filing No. 206, at 8).

The ADA states, "In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs . . . ." 42 U.S.C. § 12205. The parties do not dispute that Dr. James is a "prevailing party" under 42 U.S.C. § 12205. However, defendants claim that Dr. James' requests are unreasonable and that they should be substantially reduced. Defendants object for several reasons, which will be addressed in turn below.

**I. Dr. James Succeeded Against Only One Defendant on Only One Claim.**

The Eighth Circuit "has expressly adopted the guidelines for attorney fees set forth by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)."[3] *Ladies Ctr., Nebraska, Inc. v. Thone*, 645 F.2d 645, 647 (8th Cir. 1981). Yet "[t]he most useful starting point for determining the amount of a reasonable fee is the

---

[3] "The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983) (citing *Johnson*, 488 F.2d, at 717-719).

number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Of course, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry.  There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the results obtained."  *Id.* at 434 (quotation omitted).

> This factor is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief.  In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded?  Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?
>
> * * *
>
> In [some civil rights] cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories.  Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.  Such a lawsuit cannot be viewed as a series of discrete claims.  Instead the district court should focus on the significance of the

>
> overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.
>
> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Id.* at 434-35 (internal citation omitted).

"The district court also may consider other factors identified in [*Johnson*], though it should note that many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Id.* at 434, n.9. "There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment."

*Id.* at 436-37.  "It remains important, however, for the district court to provide a concise but clear explanation of its reasons for the fee award."  *Id.* at 437.

In this case, on summary judgment, four of the original five claims were rejected on immunity grounds; only the ADA claim remained.  In addition, Dr. James received a jury verdict in her favor against only one of the named defendants.  Defendants argue that Dr. James' claims were not closely related, such that she should not be able to collect attorney fees for work that was done for the rejected claims.

The Court finds that all of Dr. James' claims follow from a "common core of facts" regarding the acts of defendants.  *Hensley*, 461 U.S. at 435.  Dr. James' civil rights and ADA claims all stem from closely related issues of fact, that is, the denial of her applications for a Nebraska medical license because of factors associated with her disability.  The defamation claim, too, stems from the application process, whereby minutes of meetings of the Board of Medicine and Surgery that mentioned Dr. James' disability were published on the internet.  Consequently, the Court finds that the attorney fees should not be reduced because of the lack of success on related claims that one would naturally expect to be raised in Dr. James' complaint.

**II.   The Dollar Amount of Attorney Fees Requested, $138,352.50, is Greater Than the Jury's Verdict, $72,727.00.**

In *City of Riverside v. Rivera*, 477 U.S. 561 (1986), a civil rights action where an attorney fee award was made under 42 U.S.C. § 1988, the United States Supreme Court discussed at length the propriety of an attorney fee award that is greater than the jury verdict. *Rivera*, 477 U.S. at 564-65. "The amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded under § 1988. *See Johnson*, 488 F.2d, at 718. It is, however, only one of many factors that a court should consider in calculating an award of attorney's fees." *Rivera*, 477 U.S. at 574. The Court stated emphatically, "We reject the proposition that fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers." *Id.*

The Court went on to explain the policy reasons for its decision. "As an initial matter, we reject the notion that a civil rights action for damages constitutes nothing more than a private tort suit [benefitting] only the individual plaintiffs whose rights were violated." *Id.* "Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." *Id.* "Regardless of the form of relief he actually obtains, a successful civil rights plaintiff often

-7-

secures important social benefits that are not reflected in nominal or relatively small damages awards." *Id.* "In addition, the damages a plaintiff recovers contributes significantly to the deterrence of civil rights violations in the future." *Id.* at 575.

The Supreme Court discussed the difficulty that a civil rights plaintiff would face if an attorney was limited to a proportional fee: "[T]he contingent fee arrangements that make legal services available to many victims of personal injuries would often not encourage lawyers to accept civil rights cases, which frequently involve substantial expenditures of time and effort but produce only small monetary recoveries." *Id.* at 577. Indeed, "A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts. This is totally inconsistent with Congress' purpose . . . ." *Id.* at 578. Indeed, this Court finds that Dr. James' "success may nonetheless be considered significant, in light of the fact that the jury's verdict on her core claim 'not only serve[d] to vindicate important personal rights as envisioned by the statute, but also [to] further the public's interest in providing a fair playing field in the work world.'" *Wal-Mart Stores, Inc. v. Barton*, 223 F.3d 770, 773 (8th Cir.

2000)(quoting *Shrader v. OMC Aluminum Boat Grp., Inc.*, 128 F.3d 1218, 1222 (8th Cir. 1997).

The Court also notes that the defendants in this case prevailed because of absolute and qualified immunity for several of Dr. James' claims, limiting her opportunity to otherwise argue on the merits for the damages remedy.

> [W]hile damages are theoretically available under the statutes covered by [§ 1988], it should be observed that, in some cases, immunity doctrines and special defenses, available only to public officials, preclude *or severely limit the damage remedy*. Consequently, awarding counsel fees to prevailing plaintiffs in such litigation is particularly important and necessary if Federal civil and constitutional rights are to be adequately protected.

*Rivera*, 477 U.S. at 577 (quotation omitted).

Dr. James did not prevail on all of her claims against all of the defendants initially named, nor did she receive anywhere near the level of financial remuneration in the jury's verdict that she sought.  Defendants argue that "[i]n light of the minimal verdict for the Plaintiff, as compared to the amount requested, Plaintiff's Application should be reduced" (Filing No. 203, at 3).

Dr. James counters that her award should not be reduced because the time spent on the case was increased due to the "aggressive litigation strategy" of defendants (Filing No. 206,

-9-

at 6). In addition, she states that defendants "refused to . . . engage in serious settlement discussions" (*Id.*, at 5). Yet Dr. James' counsel's billing records contain several references to discussions about settlement: November 30, 2009 - "E-mail correspondence from Mike Rumbaugh . . . requesting a number for settlement negotiations. E-mail reply to Mike Rumbaugh that a settlement number is in the works" (Ex. 1, Filing No. 199, at 50); January 6, 2010 - "E-mail correspondence from Mike Rumbaugh requesting if we intend to consider trying to settle this case" (*Id.* at 50); March 16, 2010 - "E-mail correspondence from Mike Rumbaugh concerning settlement of the case" (*Id.* at 51); April 11, 2012 - "Email to Mike Rumbaugh regarding Dr. James would be notified of offer, but doubtful settlement could be less than 6 figures" (*Id.* at 22).

    The Court finds that Dr. James did not "achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Hensley*, 461 U.S. at 434.

    Defendants complain that Dr. James' application does not allow for meaningful review because the entries lack specificity, the numbers are not totaled, the exhibits are not in chronological order, the hours and rates are unclear, and subtotals do not correspond to the total time Dr. James is claiming, among other things. The Court agrees that the

evidentiary submission is poorly organized and difficult to analyze and that a summary sheet compiling the total attorney fees and costs would have been welcome.

**III. Contingency Fee Agreement.**

"As we understand § 1988's provision for allowing a 'reasonable attorney's fee,' it contemplates reasonable compensation, in light of all of the circumstances, for the time and effort expended by the attorney for the prevailing plaintiff, no more and no less." *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989). "Should a fee agreement provide less than a reasonable fee calculated in this manner, the defendant should nevertheless be required to pay the higher amount." *Id.* "Congress implemented its purpose by broadly requiring all defendants to pay a reasonable fee to all prevailing plaintiffs, if ordered to do so by the court. Thus it is that a plaintiff's recovery will not be reduced by what he must pay his counsel." *Id.* at 94.

At the Court's request, Dr. James submitted a copy of a Contingent Fee Representation Agreement ("Fee Agreement") (Ex. 1, Filing No. 208). The Fee Agreement requires Dr. James to pay all costs of the action and provides for a 33 1/3% lien on all amounts recovered (*Id.*, at 1). Accordingly, the lien would amount to one third of $72,727.00, or $24,242.33. The Fee Agreement makes no reference to any recovery of a statutory fee under 42 U.S.C. § 12205. Because the contingent fee is less than

the statutory fee to be awarded to Dr. James, defendants will "be required to pay the higher amount," meaning the statutory award. *Blanchard*, 489 U.S. at 93.

**IV. Jenna Taylor's Compensation Rate.**

As trial commenced, Dr. James' counsel, Julie Jorgensen, stated that another attorney, Jenna Taylor, would be helping Ms. Jorgensen with audio-visual equipment and would perform other supporting roles during trial, but would not be addressing the Court. On that limited representation, the Court stated that Ms. Taylor need not enter an appearance. On that basis, the Court will deny attorney fees to Ms. Taylor but will allow fees based on a reasonable rate for non-attorney legal support, which the Court finds to be $75 per hour, or $5,250.00 for 70 hours.

However, after careful review of the evidence, the Court finds that an appropriate attorney fee, including the non-attorney support of Jenna Taylor, is $85,250.00.

**V.   Dr. James' Experts' Costs.**

Defendants claim that the $1,652.00 request in costs for Dr. James' expert witness, Certified Public Accountant James Menard, is unreasonable because one of his reports was excluded by the Court and because his hourly rate of $650 is too high. The Court finds that the excluded report was offered in good faith in an effort to provide updated information that was

favorable to defendants.  In addition, while Mr. Menard's hourly rate is high, it is not altogether outside of the range that the Court has seen in other cases.  The Court will make no adjustment to the requested costs on this basis.

Defendants also object to the amount of time, thirty-four hours, spent by medical expert Dr. Larry Widman.  Dr. Widman reviewed Dr. James' medical records, prepared an expert report and disclosures, prepared for and testified at deposition, and prepared for and testified at trial.  The Court finds that thirty-four hours for this work is reasonable and will be compensated as costs.

Like the defendants, however, the Court cannot reproduce the number that Dr. James states as the total for costs.  Dr. James claims $24,188.15 in her reply brief, but defendants find the total to be $23,235.30.  Because Dr. James' documentation is difficult to analyze, the Court will grant the lower costs award calculated by defendants.  A separate order will be entered in accordance with this memorandum opinion.

DATED this 18th day of September, 2012.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court